Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50164 | **DATE** | 12/19/2001 |
| **CASE TITLE** | Peter E. Bell vs. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, defendant's motion for summary judgment is granted. Plaintiff's claim based on the breach of the Settlement Agreement is dismissed with prejudice. Plaintiff and counsel for defendant are hereby ordered to appear at a status conference on Wednesday, Jan. 2, 2002 at 9:00 a.m. to discuss the possible reinstatement of plaintiff's retaliation claim, as explained on pages 14-15 of the attached Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 20 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| /LC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

PETER E. BELL, )
)
Plaintiff, )
)
v. ) No. 00 C 50164
)
JOHN E. POTTER,[1] )
Postmaster General of the )
United States, )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff, Peter E. Bell, proceeds pro se in his complaint against defendant, John E. Potter, Postmaster General of the United States ("Postmaster General"), in which he alleges various instances of prohibited discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3, 2000e-16 ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA"). Early on in the case, the Postmaster General filed a motion to dismiss or, in the alternative, for summary judgment, as to all aspects of Bell's complaint. The court granted in part and denied in part that motion, essentially dismissing all of Bell's claims except one:

---

[1] John E. Potter has succeeded William Henderson, the original defendant in this case, as Postmaster General, and is, therefore, automatically substituted as the named defendant, pursuant to Federal Rule of Civil Procedure 25(d)(1).

his claim that the Postmaster General breached a certain "Settlement Agreement." As the court explained in its previous order, jurisdiction is proper under 42 U.S.C. § 2000e-16(c). Venue is appropriate in this district and division. See id. § 2000e-5(f)(3). Before the court is the Postmaster General's motion for summary judgment as to the one remaining claim, filed pursuant to Federal Rule of Civil Procedure 56.

## II. BACKGROUND

In early 1999, Bell applied for, but did not receive, a job with the U.S. Postal Service ("USPS") in Carol Stream, Illinois. (Compl. ¶¶ 4, 8, p. 3) Believing Mark Wolski, USPS's hiring coordinator for the Northern Illinois District, did not hire him because of his race (African-American), color (black), sex (male), and age (forty-two years old), Bell filed an informal complaint of discrimination against Wolski with the USPS in March 1999, initiating what is referred to as "pre-complaint counseling." See 29 C.F.R. § 1614.105. (Compl. ¶¶ 5, 6, 9, p. 3; LR 56.1(a) ¶ 4) The parties then engaged in private mediation, leading to a proposed Settlement Agreement. (LR 56.1(a) ¶¶ 5, 6) Bell rejected the proposal at first, but later decided to sign the agreement without any changes having been made to it. (Id. ¶¶ 7, 8) The agreement is dated May 7, 1999, and is signed by Bell, Bell's wife as his representative, and a USPS representative. (Id. ¶ 9)

Under the Settlement Agreement, the USPS agreed to restore

Bell's name and test score to "the carrier's register."[2] (Id.)
The agreement also required the USPS to "consider[] [Bell] for
employment when his name reaches the register for Area four (4)."
(Id.) Other relevant portions of the Settlement Agreement read
as follows:

> The Counselee [Bell] understands that when he receives
> a call-in notice[3] he must successfully complete all the
> pre-hire requisites which includes [sic], but [are] not
> limited to, drug screening, medical assessment, police
> check, and other pre-employment screening, and all
> results meet our [the USPS's] pre-hire requirements.
>
> * * *
>
> There are no other terms or conditions of this
> agreement which are not expressly contained herein and
> none will be implied.

(Id.; Def. Exh., Bell dep. Exh. A, "Settlement Agreement Form,"
pp. 1, 2)

After the parties signed the agreement, the USPS restored
Bell's name and score to the carrier's register for Area Four.
(LR 56.1(a) ¶ 10) Once his name was reached on that register,
the USPS sent Bell four different "call-in notices," dated
October 1, 1999, December 2, 1999, January 18, 2000, and February
29, 2000. (LR 56.1(a) ¶ 12; Def. Exh., Wolski dep. Exhs. 1, 5,
7, 9) In a follow-up to the October 1999 call-in notice, Bell

---

[2] A "register" is apparently a list of eligible persons the
USPS maintains for all of its various positions. (Pl. Exh. 7, ¶
341.1) Because Bell sought employment as a letter carrier, his
name and score were restored to the carrier's register.

[3] A "call-in notice" simply directs the applicant to report
at a certain time and place for an interview regarding the
position applied for. (Def. Exh., Wolski dep. Exh. 1)

had an interview with Postmaster Kent Clark, who rated Bell as "excellent" and certified him as meeting the USPS's "personal suitability and eligibility requirements."[4] (LR 56.1(a) Pl. Resp. ¶¶ 15, 16, 19; Pl. Exh. 2, Clark Dec. ¶ 2) Bell testified in his deposition that Postmaster Clark offered him a carrier position on the spot. (LR 56.1(a) ¶ 16) However, Clark himself has stated his role was simply to review the applications for accuracy; he had "absolutely no authority to hire city letter carriers" and it was the personnel department that was responsible for selecting and hiring applicants. (Pl. Exh. 2, Clark Dec. ¶¶ 4, 10) As the hiring coordinator for the USPS's Northern Illinois District, Wolski was the final decision maker and selecting official for hiring the entry-level carrier position for which Bell applied. (LR 56.1(a) ¶ 14; (Def. Exh., Wolski dep., p. 8)

After Clark interviewed Bell, Wolski overrode Clark's determination that Bell met the "personal suitability and eligibility requirements," based on Bell's poor work history and criminal record, and also wrote down certain negative comments Bell allegedly made during the mediation about his prior convictions. (Def. Exh., Bell dep. Exh. 5, Bates No. 115; Def.

---

[4] This phrase is from a checklist form the USPS apparently uses when interviewing candidates for certain positions. (Def. Exh., Bell dep. Exh. 5, Bates No. 115) After the interview, the interviewer checks either a "Yes" or "No" box, based on his assessment of whether the applicant "meets personal suitability and eligibility requirements." (Id.)

-4-

Exh., Wolski dep., pp. 7-9) In early December 1999 (around the same time he received the second call-in notice), Bell received a rejection letter from Wolski on the first call-in notice. (Compl. ¶ 10, p. 6) Dissatisfied with this, and having received no response from the second call-in notice by the end of December 1999, Bell wrote a letter to the USPS's Equal Employment Opportunity (EEO) Office. (Id. ¶ 11, p. 8) He essentially claimed that, by not hiring him, Wolski had breached the terms of the Settlement Agreement and retaliated against him for filing his informal complaint. (Court Doc. No. 8, Def. Mot. to Dismiss, Exh. 4) The EEO Office replied with its "Final Agency Decision," in which it cited Bell's four prior convictions for battery, unlawful use of a weapon, theft, and burglary, as well as his unemployment record for the preceding seven years, as grounds for affirming Wolski's decision not to hire Bell. (Compl. Exh. 1, p. 2) It thus concluded the USPS had complied with the Settlement Agreement. (Id.)

### III. **ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Chavez v. Illinois State Police</u>, 251 F.3d 612, 635 (7th Cir. 2001). To determine whether a genuine issue of material fact exists, the court views

the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. See Chavez, 251 F.3d at 635. However, only when a reasonable jury could find for the nonmoving party based on the record as a whole will there be a "genuine issue for trial." See id.

**A.  Subject Matter Jurisdiction**

In his motion for summary judgment, the Postmaster General renews his challenge to this court's subject matter jurisdiction over Bell's complaint and asks the court to reconsider its previous decision on this issue. He argues Title VII, and 42 U.S.C. § 2000e-16(c) in particular, does not confer jurisdiction on federal courts "to enforce settlement agreements reached before the initiation of litigation." (Def. Memo., p. 9) Part of his argument also seems to be premised on the idea that, before Bell could file suit in federal court, 29 C.F.R. § 1615.504(b) required him to first appeal the "Final Agency Decision" to the EEOC. The Postmaster General further claims this court's "prior decision rejecting this argument appears to be based on a misreading of the EEOC'S regulations and *dicta* in a single appellate decision[, Saksenasingh v. Secretary of Educ., 126 F.3d 347 (D.C. Cir. 1997),] that is contrary to the weight of authority." (Def. Memo., p. 10) The court respectfully disagrees with all of these points and believes it is the Postmaster General who has misread the statute and the regulations.

To begin with, whether subject matter jurisdiction is proper in this case has nothing at all to do with the EEOC's regulations or the Saksenasingh case. Rather, jurisdiction is based purely on a straightforward application of § 2000e-16(c). The first clause of this subsection specifically allows an individual to file a civil action in federal court "[w]ithin 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) . . . ." One of the agencies listed in subsection (a) is the USPS, 42 U.S.C. § 2000e-16(a), and the "Final Agency Decision" the USPS's EEO Office sent Bell is, without a doubt, a "final action" within the meaning of § 2000e-16(c), see 29 C.F.R. § 1614.110(b). Thus, jurisdiction is undeniably proper because Bell filed suit within ninety days from when he received the USPS's "Final Agency Decision."

And whatever the merits of the Postmaster General's argument about federal courts lacking jurisdiction to enforce "pre-litigation settlement agreements," it too is beside the point in this case because, once again, the USPS's EEO Office sent Bell a "Final Agency Decision." This "final action" discussed Bell's claim that the USPS breached the Settlement Agreement, an agreement that was (in the court's words from its previous order) reached under the auspices of the EEOC's administrative machinery - i.e., during the processing of Bell's request for pre-complaint counseling under 29 C.F.R. § 1614.105 in connection with what he believed to be discrimination prohibited by Title VII and the

ADEA. And it is this final action that gives this court jurisdiction. In other words, it is not the (alleged) breach of the Settlement Agreement itself, but the USPS's "Final Agency Decision" that it did not breach the Settlement Agreement, that confers jurisdiction under the first clause of § 2000e-16(c).

The federal regulations further bear the court out on this point and, at the same time, dispel the Postmaster General's notion that a complainant must first appeal a final agency decision to the EEOC before suing in federal court. Though not a model of clarity, § 2000e-16(c) contains four separate bases of subject matter jurisdiction, laid out more explicitly in 29 C.F.R. § 1614.407, two of which are that a complainant may file a civil action in a U.S. District Court within ninety days of receipt of either "the final action on an individual . . . complaint *if no appeal [to the EEOC] has been filed*" or "the [EEOC]'s final decision on an appeal." See id. §§ 1614.407(a), (c) (emphasis added). This is, after all, why the regulations also require a federal agency to include in its final action, and why the USPS included in *its* "Final Agency Decision" to Bell, notice of the complainant's right, upon receiving the final decision, to appeal that decision to the EEOC *or* file suit in federal court. See id. § 1614.110(b). (Compl. Exh. 1, p. 2) Thus, Bell did exactly as was his right after receiving the final decision from the USPS: rather than appeal to the EEOC, he instead filed suit here. See Saksenasingh, 126 F.3d at 350

(plaintiff not required, as part of exhausting administrative remedies, to appeal federal agency's final action to the EEOC before filing suit in federal court); 29 C.F.R. §§ 1614.401(a), (d), 1614.504(b) (stating that "complainant *may* appeal" final action to EEOC) (emphasis added).

**B. Breach of the Settlement Agreement**

With subject matter jurisdiction now secure, the court turns to Bell's claim that Wolski breached the Settlement Agreement. As it turns out, this dispute essentially boils down to a question about how to interpret the terms of that agreement. A settlement agreement is merely a contract between the parties to the litigation; as such, the formation, construction, and enforcement of a settlement agreement is governed by local contract law. See Abbott Labs. v. Alpha Therapeutic Corp., 164 F.3d 385, 387 (7th Cir. 1999); Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996), cert. denied, 519 U.S. 1117 (1997). In Illinois, if the contract language is clear and unambiguous, the parties' intent must be ascertained exclusively from the plain language of the contract as a matter of law and extrinsic or parol evidence outside the "four corners" of the document may not be considered. See Much v. Pacific Mut. Life Ins. Co., 266 F.3d 637, 643 (7th Cir. 2001) (applying Illinois law); Kaplan v. Shure Bros., Inc., 266 F.3d 598, 604 (7th Cir. 2001) (same). The interpretation of a clear and unambiguous contract is normally a question of law that is suitable for summary judgment. See Geier

-9-

v. Medtronic, Inc., 99 F.3d 238, 244 (7th Cir. 1996). Contract language will be found ambiguous only when it is reasonably susceptible to different constructions, not merely because the parties disagree as to its proper construction or application. See Kaplan, 266 F.3d at 605. In the face of an unambiguous contract, any particular interpretation one of the parties may have had at the time the contract was executed is immaterial. See id. at 604.

The Settlement Agreement between Bell and the USPS provided that Bell would be "considered for employment" once his name reached the carrier's register. It also required Bell to successfully complete and meet all of the USPS's "pre-hire requirements," including, "but not limited to, drug screening, medical assessment, police check, and other pre-employment screening." Wolski explained in his deposition that the USPS uses a "one-in-three" selection process for filling letter carrier vacancies. (LR 56.1(a) ¶ 15) This process requires the hiring official to compare each applicant to two other candidates and select the person most qualified overall of the three. (Id. ¶ 16) In comparing applicants, the USPS considers, among other things, past employment records and criminal histories. (Id. ¶ 17)

Bell does not dispute the "one-in-three" selection process was part of being "considered for employment" under the Settlement Agreement. (LR 56.1(a) Pl. Resp. ¶ 24) What he does

dispute is which factors the USPS could use in comparing him with other applicants. In particular, Bell's biggest complaint about not being selected is that Wolski (and the USPS's EEO Office when it affirmed Wolski's decisions in its "Final Agency Decision") improperly considered his past employment record and criminal history, as well as comments Bell allegedly made during the mediation about his prior convictions. He claims these matters were "resolved" during the mediation, such that Wolski could not rely on them in evaluating Bell's qualifications for the carrier job. He also says Wolski told him during the mediation that he would be given a job first, as soon as he received a call-in notice, because his name would be "at the top of the list." (Pl. Resp., pp. 1, 2, 8; LR 56.1(a) Pl. Resp. ¶¶ 7, 8, 10, 23; Def. Exh., Bell dep., pp. 18, 80) Under Bell's interpretation of the Settlement Agreement, once his name and score reached the carrier's register, and Postmaster Clark certified that Bell met the USPS's "personal suitability and eligibility requirements," it was just a matter of comparing Bell's test score with the other applicants' scores. Because Bell happened to peek at his competitors' test scores during the October 1999 call-in, and saw that his was the highest (LR 56.1(a) Pl. Resp. ¶ 17), he believes Wolski violated the Settlement Agreement by not hiring him.[5]

---

[5] Bell also makes much of Wolski overturning Clark's determination that Bell met the "personal suitability and eligibility requirements." As the facts recited above make clear, though, Wolski had the final say-so in hiring decisions, so it was ultimately his, not Clark's, place to determine Bell's

The problem with Bell's argument is that the Settlement Agreement does not limit what Wolski could or could not consider when comparing Bell in the "one-in-three" selection process. It says only that Bell must meet "*all* the pre-hire requisites," not just certain ones. This language is clear and unambiguous on its face. The court has no doubt the parties discussed Bell's employment record and criminal history during the mediation. But there is nothing in the Settlement Agreement suggesting this information suddenly became off limits in Wolski's decision-making once the parties signed the agreement. If Bell believed the true intent of the Settlement Agreement was that Wolski could no longer take into account Bell's previous employment record and criminal history in comparing him with other applicants, he either should have had something to that effect inserted in the agreement or not signed it at all. More to the point, because the agreement as written is unambiguous, any discussions the parties may have had leading up to its execution or Bell's own thoughts on what the agreement meant are immaterial.

Further buttressing this conclusion is the integration clause contained in the agreement, which states, "There are no other terms or conditions of this agreement which are not expressly contained herein and none will be implied." When parties formally include an integration clause in their contract,

---

"suitability and eligibility" for the carrier position. And, as discussed <u>infra</u>, Wolski's decision that Bell was not qualified did not violate the terms of the Settlement Agreement.

"they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." Much, 266 F.3d at 644 (internal quotations and citations omitted). "An integration clause is a 'clear indication that the parties desire the contract be interpreted solely according to the language used in the final agreement.'" Id. In light of the Settlement Agreement's integration clause, nothing Wolski and Bell may have said during the mediation, or any other parol evidence for that matter, can be used to alter the clear import of the agreement's terms.

As it is, the plain language of the Settlement Agreement required Bell to satisfy all of the USPS's pre-hire requirements. This included the one-in-three selection process, part of which called upon Wolski to compare the past employment records and criminal histories of the three competing applicants. Bell does not dispute he has four prior criminal convictions.[6] (LR 56.1(a) ¶ 21) He also admits there was a period of approximately six years, between 1990 and 1996, where his only job was "caring for [his] father on a fulltime basis" and "caring for [his]

---

[6] He does, however, object to the USPS relying on these for the separate reason that they are all more than ten years old, the most recent one (the battery conviction) dating back to 1983. Bell cites a postal regulation explaining that, where an applicant has no criminal convictions in the ten years immediately preceding the date of application, the applicant's conviction record "may not serve as the sole basis for disqualification from appointment." (Def. Exh., Wolski dep. Exh. 11 ¶ 313.344) But simply because convictions that are more than ten years old may not be the "sole" basis for denying employment does not mean they cannot be considered at all.

children," in addition to another fourteen months or so of unexplained unemployment. (Id. ¶ 22) And because Bell has offered absolutely no evidence that the individuals hired instead of him had less desirable employment records or criminal histories, he cannot show Wolski breached the Settlement Agreement.

C. **Post-Settlement Retaliation**

In its previous order, the court dismissed, among other things, Bell's claim that Wolski retaliated against him for engaging in protected activity - i.e., Wolski refused to hire Bell, after the Settlement Agreement was signed, for filing his original informal complaint with the USPS. It did so on the ground that Bell had not exhausted his administrative remedies with respect to the retaliation claim. However, in his response to the Postmaster General's motion for summary judgment, Bell points to a line of cases holding that a plaintiff need not exhaust administrative remedies on a claim of retaliation growing out of an earlier charge of discrimination. Although the cases Bell cites are not from the Seventh Circuit, see Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994); Gupta v. East Tex. State Univ., 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981), the same principle has found its way into Seventh Circuit case law. See McKenzie v. Illinois Dep't of Transp., 92 F.3d 473, 482-83 (7th Cir. 1996); Rennie v. Garrett, 896 F.2d 1057, 1062 (7th Cir. 1990); Malhotra v. Cotter & Co., 885 F.2d 1305, 1312

(7th Cir. 1989). In light of this "exception" to the administrative exhaustion requirement, the court recognizes it may have prematurely dismissed Bell's retaliation claim (a point the Postmaster General also tacitly concedes by not responding to it in his reply brief).[7] For that reason, the court is ordering the parties to appear for a status hearing to discuss the possible reinstatement of this claim.

### IV. CONCLUSION

For the reasons stated above, the Postmaster General's motion for summary judgment is granted and Bell's claim based on the breach of the Settlement Agreement is dismissed with prejudice.

---

[7] Bell similarly argues the court erred in dismissing his "claims of race, color, sex and age discrimination." (Pl. Resp., p. 8) What he means by this, as his reference to his "pre-complaint" makes clear, are his pre-settlement discrimination claims – those that initially prompted him to file an informal complaint with the USPS. (Id.) However, Bell unequivocally released those in the Settlement Agreement. (Def. Exh., Bell dep. Exh. A, "Settlement Agreement Form," p. 3) ("By signing this agreement, the counselee [Bell] withdraws any and all pending complaints, appeals, or other actions relative to the subject matter contained in this complaint.") And any chance he had of resuscitating these claims has been altogether eliminated by the court's ruling that Wolski did not breach the agreement.

-15-

E N T E R:

*[signature]*
PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 19, 2001